UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ANTHONY SUMMERS,<br>TDCJ # 02151376, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:18-CV-0148 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Summers, a state inmate at the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), filed this lawsuit in the 412th District Court for Brazoria County, and Defendant removed to this Court (Dkt. 1). Plaintiff complains about TDCJ personnel's handling of inmate grievances, among other issues. Because Summers is a prisoner, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the pleadings. The Court must dismiss the case, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). After reviewing all of the pleadings and the applicable law, the Court concludes that this case must be **DISMISSED** for the reasons that follow.

# I.    BACKGROUND

On March 8, 2018, Plaintiff filed suit in the 412th District Court of Brazoria County, Texas, Cause No. 95839-I.  At the time, Plaintiff was incarcerated at the Michael Unit in Anderson County.

Plaintiff's state court pleading is headed "'Complaint' and 'Grievance' Under U.S.C.A. 1, 5, 6, 7, 8, 14 Amendments" (Dkt. 1-3).  The pleading does not carry a customary caption, and Plaintiff does not identify a defendant.  Plaintiff alleges in his pleadings that TDCJ personnel do not adequately investigate or reply to grievances:

> [W]hen I write a state prison grievance you State of Texas "Grievance Officers" and or "Staff" will reply not a grievable issue[], or inappropriate, and then you say grievable time period has expired.  The fact all you will not do investigation for no inmate and will not use surveil[l]ance videotapes to protect this "old man" or any inmate from []officers and or staff, "attack to an inmate"!

(*Id*. at 3).  When docketing the case, the state court listed one defendant:  the director of TDCJ's Correctional Institutions Division.[1]  Plaintiff states in his pleadings that an unidentified person, addressed as "you," accused Plaintiff of lying on a grievance dated March 28, 2018, that the grievance was never investigated, and that "your so called counsel substitute sign[ed] for me before ever coming to my cell" (Dkt. 1-3, at 5). Plaintiff listed nineteen grievances by number, but did not provide their dates or any detail about what issues were grieved or how TDCJ responded to the grievances.  As

---

[1]    On the state court docket, the defendant is listed as Rick Thaler, the former director of the Correctional Institutions Division.  Because Thaler has retired, the current director, Lorie Davis, is substituted as the defendant.  FED. R. CIV. P. 25(d).

relief, he requested that the court "'fire all officers' and or 'staff' now and transfer me" (*id*. at 4).[2]

On May 4, 2018, Judge Edwin Denman of the 412th District Court in Brazoria County construed Plaintiff's pleadings as an application for a temporary restraining order ("TRO") and held a hearing (Dkt. 1-3, at 23-25). Plaintiff was brought to the court by a bench warrant. Defendant had not been served but, because the Court had notified the Attorney General of the date and time of the hearing, counsel from the Attorney General's office was present in the courtroom (*id*. at 23).

After hearing testimony from Plaintiff, Judge Denman entered a TRO. Judge Denman found that Plaintiff would be irreparably harmed if relevant information regarding Plaintiff's grievances was not preserved, and entered a TRO restraining TDCJ, its officers, directors, employees, and agents from altering, amending, destroying, or recording over "any of the surveillance cameras in units in which Plaintiff resided at the time of the alleged grievances," as well as "any of the records of TDCJ that pertain to the alleged grievances," until further order of the court (*id*. at 23-24). The order listed fourteen grievances identified by the Plaintiff. The TRO also restrained TDCJ from altering, amending, destroying "all shift rosters, reports or documents that relate or pertain to the allegations in any of the [g]rievances" until further order of the court (*id*. at

---

[2]  Plaintiff's pleading also included other cursory complaints, including that he had been assaulted, that he does not have power or water, that his money was being deducted for medications and a wheelchair, that when requesting medical care he was told to "put in for a nurse 'sick call'," that he was not being allowed to buy eye glasses, and that he had been denied court forms, postage, and other legal supplies (*id*. at 5, 7). He makes further complaints in recent letters to the Court (Dkt. 7, 8).

24).  In addition, Judge Denman ordered TDCJ to comply with its existing policies and procedures regarding provision of Plaintiff with postage, envelopes, and writing materials necessary for litigation, and to allow Plaintiff to obtain a copy of his trust fund account statement (*id*. at 25).[3]  The TRO order identifies the Terrell Unit, in Brazoria County, as the TDCJ unit relevant to this lawsuit.  Plaintiff's pleadings had not mentioned the Terrell Unit, and instead appeared to complain of events at the Michael Unit in Anderson County.

Judge Denman set a hearing for May 16, 2018, to consider whether to enter a temporary injunction (*id*.).  On May 15, 2018, Defendant removed the action to this Court and paid the $400 filing fee.

## II.   STANDARD OF REVIEW

The Court screens this case to determine whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A.  In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and

---

[3]      Judge Denman noted that Plaintiff had two other cases pending in Brazoria County, Cause Nos. 95694-I and 95695-I, that raised the issue of providing inmates with litigation supplies (*id*. at 24).  He further stated, "For the record, this is not the first case in this Court where allegations, similar to those made by this Plaintiff, have been made by inmates, and the Court recently completed a hearing in which it heard evidence of similar violations, and the Court found that TDCJ, its officers, employees, and agents were not following their own policies" (*id*. at 25).

citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); see *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.   DISCUSSION

As a preliminary matter, removal jurisdiction is proper in this Court because Plaintiff filed this suit in the District Court for Brazoria County, *see* 28 U.S.C. § 1441(a), and appears timely based on the Attorney General's representation that the removal was filed within thirty days of its receipt of Plaintiff's pleadings.   *See* 28 U.S.C. § 1446(b)(2)(B).  Because the TRO identifies the Terrell Unit in Brazoria County as the site of the events alleged by Plaintiff (Dkt. 1-3, at 23), venue appears appropriate in this Court.

Plaintiff alleges in his pleading that TDCJ officials violated his constitutional rights, listing the First, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments to the

Constitution (Dkt. 1-3, at 3).[4]  Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation.  See *Pratt v. Harris Cnty., Tex*., 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).  Actions brought under Section 1983 may be brought against public officials in either their official or individual capacities.

To the extent Plaintiff sues Director Davis in her individual capacity,[5] his claim fails because he has not alleged any personal involvement by Davis.  *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  The Court therefore construes all of Plaintiff's claims against Davis as brought in her official capacity as director of the Correctional Institutions Division.

A claim against a TDCJ official in his or her official capacity is a claim against TDCJ, and thus a claim against the State of Texas.  *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008).  Because the Eleventh Amendment bars actions for damages in federal court against a state, "only prospective equitable relief is available."  *Shisinday v. Johnson*, 234 F.3d 28, 2000 WL 1568146, at *3 (5th Cir. 2000).

---

[4]     Plaintiff lists multiple amendments to the constitution without elaboration.  *See* Dkt. 1-3, at 3 (alleging multiple actions are "in violation of U.S.C.A. 1, 5, 6, 7, 8, 14 Amends").  The state court's TRO opinion did not identify a legal basis, constitutional or otherwise, supporting the entry of the TRO (Dkt. 1-3, at 23-25).

[5]     The Court recognizes that Plaintiff did not name Davis in his original pleading. However, he did not clearly name *any* Defendant, and the state court identified the relevant defendant as the director of the Correctional Institutions Division.  In any event, the narrative of Plaintiff's complaint does not identify, or allege the specific involvement of, any particular prison official or employee.

*See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 169 (1985) (implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State). In this suit, Plaintiff does not seek monetary damages, but only injunctive relief. *See* Dkt. 1-3, at 4 (requesting that the Court "'fire all officers' and or 'staff' now and transfer me").

Plaintiff's pleadings are difficult to decipher but appear to allege the violation of several constitutional rights, discussed below.

### A. TDCJ Grievance Procedures and Processing

Based on the pleadings and the TRO, Plaintiff's primary complaint is that TDCJ does not properly investigate and process his administrative grievances, and is not using surveillance footage to protect him. As stated above, because Plaintiff alleges no personal involvement by Director Davis, the Court construes his claim as a claim against Davis in her "official capacity," and therefore as an action against TDCJ. To prevail in an official capacity action, the plaintiff must show that "a policy or custom" of TDCJ "played a part in the violation of federal law." *Shisinday*, 234 F.3d 28, 2000 WL 1568146, at *3 (citing *Graham*, 473 U.S. at 166). Plaintiff does not explicitly allege a policy or custom of TDCJ that violated his rights. Rather, he appears to be alleging that TDCJ did not follow its own policies governing the inmate grievance process when it handled grievances that *he* had filed.

Moreover, Plaintiff does not adequately allege that TDCJ "played a part in the violation of federal law. *See Shisinday*, 234 F.3d 28, at *3. To the extent Plaintiff claims that TDCJ's grievance system violates the Due Process Clause of the Fourteenth

Amendment, he fails to state a claim. In certain circumstances, the Due Process Clause protects inmates' liberty interest in prison disciplinary proceedings.[6] However, Plaintiff's allegations pertain to TDCJ's grievance processing, not disciplinary proceedings. The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having . . . . grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Because an inmate has no cognizable liberty interest, "any alleged due process violation arising from the alleged failure to investigate [inmate] grievances is indisputably meritless." *Id*. Courts repeatedly have dismissed lawsuits brought by prisoners to challenge TDCJ's administration of its grievance procedure. S*ee, e.g.*, *Morris v. Cross*, 476 F. App'x 783 (5th Cir. 2012) (affirming dismissal of inmate's claim that prison official's alleged failure to adequately investigate his grievance because inmate lacked a protected interest); *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010) (dismissing as frivolous inmate's claim that prison officials violated his constitutional rights by their failure to process his grievances).

Finally, to the extent Plaintiff argues that TDCJ officials are not following their own procedures for processing grievances, the Fifth Circuit has made clear that an inmate has no constitutional interest in the TDCJ's alleged failure to follow its policies and procedures when processing his grievances. *See Brewster v. Dretke,* 587 F.3d 764, 768 (5th Cir. 2009) ("A prison official's failure to follow the prison's own policies,

---

[6]     *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000) (a Texas inmate can demonstrate a due process violation resulting from disciplinary proceedings only if the inmate is eligible for early release on the form of parole known as mandatory supervision *and* the disciplinary conviction at issue resulted in a loss of previously earned good time credit).

procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met") (internal citation and quotation marks omitted).

Plaintiff has not alleged a "policy or custom" of TDCJ that could suffice for a claim under the Due Process Clause. His claim challenging TDCJ's grievance process therefore is dismissed for failure to state a claim upon which relief can be granted.

### B.   Access to Courts

Plaintiff also complains about the denial of supplies necessary to litigate his case, including postage stamps, court forms and other legal supplies. The Court construes these allegations as bringing a claim for deprivation of his constitutional right of access to the courts. *See Christopher v. Harbury*, 536 U.S. 403, 414-15 & n.12 (2002). This claim requires Plaintiff to plead both an underlying cause of action, as well as "official acts frustrating the litigation." *Id*. at 415. The plaintiff must demonstrate a "relevant, actual injury stemming from the defendant's unconstitutional conduct":

> This requires the inmate to allege that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered. The inmate must describe the underlying claim well enough to show that its arguable nature is more than hope.

*Brewster*, 587 F.3d at 769 (internal citations, quotation marks, and alteration omitted) (holding that an inmate who alleged that his legal research was delayed when his materials were confiscated had failed to state a claim because his pleadings did not "identify any issue that he would have brought in his criminal appeal or other suit if the law journal had not been taken from him").

In this case, Plaintiff has not articulated any underlying claim that was frustrated by TDCJ officials' alleged actions depriving him of stamps and legal supplies. Plaintiff's claim regarding access to courts is dismissed for failure to state a claim upon which relief can be granted.

### C.   <u>Retaliation</u>

Finally, Plaintiff appears to allege retaliation against him. Claims of retaliation in the prison context generally flow from protections provided by the First Amendment. A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982). Prison officials have wide latitude in the control and discipline of inmates, but that "latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal citation and quotation marks omitted). These limitations do not unduly restrict prison officials' actions legitimately motivated by concerns for prison order and discipline, and claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *Id.*

To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). If an inmate is unable to point to a

specific constitutional right that has been violated, the claim will fail. *Woods*, 60 F.3d at 1166. To show intent, the inmate must allege more than his personal belief that he is the victim of retaliation. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (1997). The inmate must produce direct evidence of motivation, or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. As for causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *See id.*

Plaintiff's pleadings do not clearly state which right he exercised that led to the alleged retaliation, nor does he identify a specific person who allegedly retaliated against him. His allegations of retaliation are as follows:

> The ***retaliation*** is in violation of state policy PD-22 rules, state laws, and of federal laws, but when I write a state prison grievance you State of Texas grievances officers and or staff will reply not a grievable issues, or inappropriate, and then you say grievable time period has expired . . . . The attacks by officers, staff, and or officials of TDCJ-ID shall be stopped and all the[ir] punishments never being taken off of restriction, see computer over 6 months on restrictions, will not let me buy eye glasses, so I can see! And this is racial and discrimination, harassment, ***retaliation***, and is based on race, color, religion, sex, gender, age, disability is all prohibited.

Dkt. 1-3, at 3 (internal quotation marks and alterations omitted) (emphasis added).[7]

Plaintiff makes no allegation that Director Davis, the sole defendant in this suit, or any specific TDCJ official took a retaliatory adverse action against him. He clearly fails to

---

[7]    *See also* Dkt. 1-3, at 5 ("I have no power and cannot use the water it [goes] all over my roof of cell, floor, wall, bed, property, I have no power for my fan or hotpot so cold in here, I am in so much pain, bleeding, vomiting blood, food, officers not let me sleep, try to kill me assaulted again on surveillance videotape called names and told to die old bitch, sad ***you do all this to me for filing a grievance that is true*** and you lock me in agg-seg [sic] and the[n] write me a disciplinary case no hearing because I cannot walk good and bleeding") (emphasis added) (alterations omitted).

plead more than his "personal belief" that he is the victim of retaliation by Davis, or by any TDCJ official. *See Johnson*, 110 F.3d at 310. Finally, because he alleges multiple motivations for the alleged retaliation, including race, religion, age, and disability, he fails to plead that retaliation was a "but for" cause of the alleged adverse actions. *See Woods*, 60 F.3d at 1166.

Plaintiff's retaliation claim is dismissed for failure to state a claim upon which relief can be granted.

### D.   Other Allegations

In his pleadings (Dkt. 1-3) and recent letters (Dkt. 7, 8), Plaintiff brings other complaints, including allegations about an unspecified assault, that money has been improperly deducted from his account for medical expenses, and that his punishment in an unspecified disciplinary hearing was improper. He provides no information about when these alleged violations happened, nor does he identify any persons who were involved. These conclusory allegations are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 (citation omitted). Moreover, none of these allegations state a claim against Director Davis, the only defendant in this suit, because Plaintiff does not allege her personal involvement and has not identified any "custom or policy" of TDCJ that contributed to an alleged violation of federal law. *See Porter*, 659 F.3d at 446; *Shisinday*, 234 F.3d 28, 2000 WL 1568146, at *3.

Because none of Plaintiff's allegations demonstrate a constitutional violation of the sort actionable under 42 U.S.C. § 1983, this lawsuit will be dismissed in its entirety.

**IV. CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** that this civil action is **DISMISSED** with prejudice as frivolous and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b).

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 22nd day of June, 2018.

George C. Hanks Jr.
United States District Judge